OPINION
{¶ 1} Appellant Terry Barber appeals from the judgment entered in the Licking County Court of Common Pleas, Juvenile Division, which granted permanent custody of Zachary and Brianna Kincer to the Licking County Department of Job and Family Services, Children's Services Division [hereinafter agency].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant is the father of Brianna Kincer. Brianna and Zachary's mother is Janice Kincer. Zachary's putative fathers are John Doe and Michael Durand
 {¶ 3} On January 16, 2002, a complaint alleging that Zachary Kincer, d.ob. 8/12/93, and Brianna Kincer, d.o.b. 3/11/96, were dependent was filed in the Juvenile Division of the Licking County Court of Common Pleas. Both children were placed in the emergency shelter care custody of the agency. By Judgment Entry filed April 1, 2002, the children were adjudicated dependent and placed in the temporary custody of the agency.
 {¶ 4} A motion for permanent custody was filed on December 19, 2002. A hearing on that motion was held before a Magistrate on March 7, 2003.
 {¶ 5} Appellant appeared at the hearing but presented no evidence in the form of oral testimony or exhibits. Neither the mother nor any putative father appeared at the hearing.
 {¶ 6} A Magistrate's Decision was filed on April 28, 2003. In the Magistrate's Decision, the Magistrate recommended that permanent custody be granted to the agency and that all parental rights of appellant, Michael Durand and/or John Doe, if any, and all parental rights of the mother be permanently terminated. That same day, April 28, 2003, the trial court entered a Judgment Entry which approved and adopted the decision of the Magistrate as the order of the Court, subject to Juv. R. 40.
 {¶ 7} It is from the April 28, 2003, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 8} "1. The Manifest Weight Of The Evidence Does Not Support An Award Of Permanent Custody.
 {¶ 9} "2. The State Failed To Meet The Best Interest Of The Children Test.
 {¶ 10} "3. The State Failed To Meet The Clear And Convincing Evidence Standard."
 I, II, III {¶ 11} Appellant's assignments of error shall be considered together.
 {¶ 12} Initially, we note that appellant did not file any objection to the Magistrate's Decision. Juvenile Rule 40(E) controls decisions by a Magistrate in juvenile cases. The rule provides, in relevant part:
 {¶ 13} "(E) Decisions in referred matters
 . . . {¶ 14} "(3) Objections
 {¶ 15} "(a) Time for filing. Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the decision. . . .
 {¶ 16} "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection. . . . A party shallnot assign as error on appeal the court's adoption of any finding of factor conclusion of law unless the party has objected to that finding orconclusion under this rule. . . . "(Emphasis added).
 {¶ 17} Appellant maintains that the trial court's decision was against the manifest weight and sufficiency of the evidence. Appellant argues that many of the crucial findings of fact made by the Magistrate and adopted by the trial court are not supported by the evidence, and that the Magistrate should have made just the opposite findings. Because appellant failed to object to these findings and/or conclusions of the Magistrate, he may not now assign them as error on appeal. Juv. R. 40(E)(3)(b). Therefore, this court's review is limited to a review of whether the findings and conclusions adequately support the trial court's decision to grant permanent custody.
 {¶ 18} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 19} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 20} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 21} "(b) The child is abandoned.
{¶ 22} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 23} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 24} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 25} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 26} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 27} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 30} A review of the findings of fact and conclusions of law support the trial court's decision to grant permanent custody to the agency. The trial court made the following findings and conclusions:
 {¶ 31} "FINDINGS OF FACT . . .
 {¶ 32} "5. Brianna's father, Terry Barber, has failed to remedy the conditions which led to the removal of the children from his custody. Mr. Barber has demonstrated through his actions during the pendency of this case that he is either unwilling and/or unable to remedy such conditions and unable to develop the skills necessary to provide proper care and supervision for the children now or at any time in the foreseeable future.
 {¶ 33} "6. At the time of removal, the father's residence was insufficient to house both children and was in a state of disrepair which presented certain safety risks for the children. The concerns regarding housing were expressed to the father and as of the date of the hearing on this motion no effort has been made to remedy the defects in the housing situation. As a result, father's housing remains inadequate and unsafe for the children. The bedrooms are insufficient and the exterior of the residence presents safety risks which prevent the children from returning to the current home.
 {¶ 34} "7. Father has also struggled with his drug usage throughout the pendency of this case. Father did not enroll in a course of counseling at L.A.P.P. and has not submitted to all requested drug screens. Those drug screens he has submitted to have not been completed in a timely fashion so as to provide an accurate current picture of his potential drug usage. Father has admitted to recent cocaine use after his drug screen returned positive for cocaine. As a result, father's on-going substance abuse issues remain an impediment to re-unification with the children.
 {¶ 35} "8. Father has not kept in contact with the social worker and has failed to attend many of the scheduled meetings. In fact, father had no contact whatsoever with the social [sic] for a period of six (6) months between June and December, 2002. Father has also been inconsistent in his visits with the children. Father has missed many scheduled visits and when he does attend he is often late, to the extent that the social worker will not have the children brought to the visit until Mr. Kincer [sic] has in fact arrived. Father also had no contact with the children for a period of six (6) months from June through December, 2002.
 {¶ 36} "9. Even after the filing of the Motion for Permanent Custody, father has made some effort to renew his efforts toward reunification but has been sporadic in his contact with the social worker and his visits with the children. Father's tardiness and/or non appearance for scheduled visits has a very obvious detrimental emotional impact upon the children.
 {¶ 37} "10. Father continues to have legal difficulties outside of this case. Father is not paying his child support as previously ordered and has been incarcerated on one (1) occasion for such nonpayment of support. Father has also been incarcerated during the pendency of this case for thirty (30) days for theft.
 {¶ 38} "11. Father's employment history has been sporadic at best throughout the pendency of this case. Essentially, his employment history has been limited to odd jobs and "bit" work as available with no steady employment or income at any time throughout this case.
 {¶ 39} "12. Father has been unable to establish stable income or to establish a consistent budget. Despite financial assistance from his sister, father has struggled to remain current in his rent and has experienced difficulty paying for the utilities, resulting in one such utilities being cut off for non-payment for varying lengths of time throughout the pendency of this case.
 {¶ 40} "13. Initially, the children had difficulty adjusting to removal from their father's custody. They have expressed a great deal of concern and stress for their father and his ability to care for himself. The children have adjusted over time and their behaviors at home and at school have been brought under control, in large part due to the clear structure and consistent discipline employed by the current foster parents, where the children have been placed since removal. Both children are in counseling and are working well with the foster parent and are making progress behaviorally, academically, and socially.
 {¶ 41} "14. Father was advised by the social worker of her intent prior to the filing of the motion in this case. Father did not express any surprise or concern. Instead, he expressed the desire for more time to deal with the issues which lead to removal and prevented re-unification. Father seemed to feel that he could make necessary modifications to achieve re-unification, however, he had no plan as to how he would do so or any concept of a time frame within which he might be able to do so.
 {¶ 42} "15. The Agency has made extensive attempts to enroll father in services to address the causes of removal. In addition to not completing L.A.P.P., father was referred to the Agency's parenting skills class but stopped attending after only a few sessions. There are no other services available which have not been offered to the father that might be of benefit towards re-unification in light of the fact that father has completely failed to avail himself of those services already offered.
 {¶ 43} "16. These children deserve a strong, stable, legally secure placement in order to develop and thrive and it is clear the father will never be able to provide such a placement. The children have continued to express concern and distress for their father because he has been unable to stabilize his life. The children are concerned for the father's ability to care for himself, therefore, to ask them to wait even longer for him to be able to care for himself and care for the children is clearly contrary to their interests and is detrimental to the emotional development, both short and long-term.
 {¶ 44} "17. The children both have a strong relationship with the father. However, they also seem to have developed strong relationships with others as well, including their current foster placement, teachers, and a former foster family who is being considered as a possible adoptive placement option should permanent custody be granted.
 {¶ 45} "18. The children need a strong, secure, legally-stable placement. They know there [sic] current placement is not permanent and that only adds to their distress and delays their further development.
 {¶ 46} "Conclusions of Law . . .
 {¶ 47} "2. The Agency has made all reasonable and diligent efforts to prevent the children's removal from the home. The Agency has worked with the family for an extensive period of time with no significant improvement shown. The case plans previously filed herein further indicate the lengths to which the Agency has gone to prevent the children's removal and to attempt reconciliation with the mother or father.
 {¶ 48} "3. There are no known relatives placement options currently available for placement of the children. Placement of the child in the custody of the mother or father would be contrary to their best interest and welfare. . . .
 {¶ 49} "5. It has been established by clear and convincing evidence that following the children's removal from the home that all parents have failed continuously and repeatedly to substantially remedy the conditions which led to removal. The lack of progress by father, Terry Barber, and the lack of involvement in services by both the mother [sic] clearly indicates such an unwillingness and/or inability to work toward re-unification.
 {¶ 50} "6. An award of permanent custody will serve both children's best interests. While the children do have a strong relationship with the father, Terry Barber, and some lingering bond with the mother, Janice Kincer, any harm associated by the loss of the relationship with the mother or father, if any, would be greatly outweighed by the benefit of a secure, safe, stable environment.
 {¶ 51} "7. Zachary and Brianna are in need of a stable and legally secure placement. It is not reasonable to believe that the mother or the father could provide such a legally secure and stable environment for the children now or at any time in the conceivable future. The only realistic manner by which such stability can be achieved is through an award of permanent custody to the Agency. The children have been acclimated to the current foster home and it would be in her [sic] best interests to remain in that placement until a more permanent placement can be found, which might involve a family with which these children had previously been placed through Franklin County Children's Services."
 {¶ 52} These findings and conclusions are sufficient upon which to find that the trial court's grant of permanent custody was not against the manifest weight of the evidence.[1]
 {¶ 53} We find no reversible error. Accordingly, appellant's assignments of error are overruled.
 {¶ 54} The April 28, 2003, Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.
By: Edwards, J., Gwin P.J. and Wise, J. concur.
[1] We note that authority exists in Ohio law for the proposition that appellant's failure to object to the Magistrate's Decision does not bar appellate review of "plain error." See R.G. Real Estate Holding, Inc. v.Wagner (April 24, 1998), Montgomery App. No. 16737; Timbercreek VillageApts. v. Myles (May 28, 1999), Montgomery App. No. 17422. However, the Supreme Court has cautioned against excessive application of plain error analysis.: "We do not hold that application of the plain error doctrine may never be appropriate in civil cases. However, we do reaffirm and emphasize that the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." (Emphasis omitted.) Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 122, 679 N.E.2d 1099. However, upon review of the record in this case, we do not find plain error.